UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

LATIFF THOMPSON,                                   **Civil Action No.:**
                                                   18-CV-4105 (PAC)
                          Plaintiff,

                                                   **SECOND AMENDED**
                                                   **COMPLAINT**
                -against-                          *Jury Trial is Demanded*


CITY OF NEW YORK; KAHLA CADORE
in an official and individual capacity);
SIWY MADE (in an official and individual capacity);
GENE PARK (in an official and individual capacity),

                          Defendants.

------------------------------------------------------------------------X

      PLAINTIFF, LATIFF THOMPSON, by and through his attorney, Jacob Z. Weinstein, Esq., providing upon additional information discovered and received after the previous Amended Complaint makes the following Second Amended Complaint upon information and belief and states and alleges:

## PRELIMINARY STATEMENT

    1.    This is a civil action seeking monetary relief, a declaratory judgment, compensatory and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights via Malicious Prosecution and denial of a Fair Trial brought pursuant to 42 U.S.C. § 1983, the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution. Defendants lied and fabricated evidence with the intent to deprive Plaintiff's constitutionally protected rights.

    2.    Specifically, Plaintiff alleges that the Defendants (collectively and individually) negligently, wantonly, recklessly, intentionally and knowingly sought to and did

wrongfully deprive Plaintiff of his Constitutional rights, pursuant to the above-mentioned statutes and causes of action by committing acts under color of law and depriving the Plaintiff of rights secured by the United States Constitution and Federal law.

3. Plaintiff alleges that Defendants (collectively and individually), their agents, employees and servants unlawfully and under color of law maliciously prosecuted and deprived Plaintiff of a fair trial by fabricating facts and circumstances which lead to Plaintiff's wrongful conviction.

4. The New York State Supreme Court, Appellate Division, First Department found, on April 30, 2015, that the Individual Defendants unlawfully detained and arrested Plaintiff without probable cause, thereafter overturning and dismissing Plaintiff's criminal matter.

5. Plaintiff further alleges that the City of New York was negligent in training, hiring, and supervising its Police Officers, employees, representatives, and/or agents.

6. Further, Plaintiff alleges that the City of New York was deliberately indifferent to the need to train its Officers.

7. Accordingly, as a direct result of the City of New York's policies and inactions, Plaintiff suffered harm to his liberty and person.

8. The City of New York is liable to the Plaintiff for malicious prosecution and lack of a fair trial for condoning and encouraging such civil rights violations and for maliciously failing to investigate and punish the actions of the individual Defendants.

9. As a result of the Defendants' actions (collectively and individually), Plaintiff suffered a violation of his enumerated constitutionally protected rights; and significant and lasting harm.

**JURISDICTION AND VENUE**

10. This action is being brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

11. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

12. This court is requested to exercise supplemental jurisdiction with respect to Plaintiff's State Law claims pursuant to 28 U.S.C. § 1367.

13. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391, based on the fact that the place where the events and violations herein alleged occurred was in The City of New York, New York County.

**PARTIES**

14. Plaintiff, LATIFF THOMPSON (hereinafter "PLAINTIFF" or "MR. THOMPSON") is a thirty (30) year old Black male.

15. Upon information and belief, the defendant CITY OF NEW YORK (hereinafter "NEW YORK CITY" or "DEFENDANT" or "DEFENDANT CITY") is a duly constituted municipal corporation of the State of New York.  Upon information and belief, NEW YORK CITY formed and has direct authority over several different departments including the New York City Police Department.  The aforementioned department and/or employees, agents, or representatives of these departments are directly involved in violations that are at issue in this complaint.

16. Upon information and belief, Defendant KAHLA CADORE (hereinafter "CADORE") at all relevant times herein was a member of the New York City Police Department (hereinafter "NYPD"), employed by NEW YORK CITY.

17. Upon information and belief, Defendant SIWY MADE (hereinafter "MADE") at all relevant times herein was a member of the NYPD, employed by NEW YORK CITY.

18. Upon information and belief, Defendant GENE PARK (hereinafter "PARK") at all relevant times herein was a member of the NYPD, employed by NEW YORK CITY.

19. Defendants CADORE, MADE, and PARK are hereinafter collectively referred to as the INDIVIDUAL DEFENDANTS.

20. The INDIVIDUAL DEFENDANTS and DEFENDANT CITY are hereinafter collectively referred to as the DEFENDANTS.

21. The INDIVIDUAL DEFENDANTS are being sued in their individual and official capacities.

22. At all relevant times herein, INDIVIDUAL DEFENDANTS were acting under color of New York State and Federal law while employed by NEW YORK CITY at the NYPD.

## FACTUAL ALLEGATIONS

23. On August 22, 2011 Police Officers CADORE, MADE, and PARK were on uniform foot patrol in their assigned area, which extended from East 112th to East 115th Street, and from First Avenue to Madison Avenue.

24. At around 11:25 p.m., the officers heard a radio report that a gunpoint robbery had just occurred at 77 East 115th Street.

25. While the INDIVIDUAL DEFENDANTS searched the area, about 10 minutes later, they received a second radio report of a "suspicious male" in front of 1581 Park Avenue, in the Johnson Housing Project, two blocks from the location of the robbery.

26. The INDIVIDUAL DEFENDANTS went to that address, and saw an unidentified man entering the building using a key, which they did not find to be suspicious. About a minute later, however, they saw MR. THOMPSON exit the location separate from three other young black men who emerged close in time to MR. THOMPSON.

27. MR. THOMPSON did not know these three young men, but was exiting the building at a similar time as they were.

28. PLAINTIFF at this time was wearing a button-down shirt and was recovering from being shot earlier, in that MR. THOMPSON also had a colostomy bag under his shirt due to his prior physical injury.

29. The location of the colostomy bag was by his front mid-section (near the belt area).

30. Moreover, PLAINTIFF was using crutches at this time as he still had bullets logged in his hip.

31. The INDIVIDUAL DEFENDANTS fabricated evidence in order to detain PLAINTIFF.

32. Furthermore, according to CADORE, the men were all approximately 5' 7".

33. MR. THOMPSON's pedigree information showed that he was 5' 8" tall.

34. The INDIVIDUAL DEFENDANTS stopped MR. THOMPSON and MADE directed the four men to stop and stand against a fence in front of 1581 Park Avenue, and then asked them for identification.

35. PLAINTIFF was entirely compliant.

36. MADE took away PLAINTIFF's crutches and forced him to stand against the above-mentioned fence, stating in sum and substance that PLAINTIFF did not look like he needed them.

37. MR. THOMPSON informed the INDIVIDUAL DEFENDANTS that he was injured and voluntarily offered his identification to show he did not have any outstanding warrants.

38. Thereafter one of the other individuals offered "identification" which turned out to be a credit card.  When PARK examined it, the unknown individual struck at PARK and dropped a firearm, fleeing the location.

39. PARK gave chase to this unknown individual.

40. CADORE picked up the firearm and pointed her service weapon at PLAINTIFF and asked MR. THOMPSON if he likes committing robberies.

41. Thereafter, PARK returned without apprehending the unknown individual.

42. PLAINTIFF repeatedly told the INDIVIDUAL DEFENDANTS that he had not robbed anyone.

43. The INDIVIDUAL DEFENDANTS were visibly and verbally disgusted by PLAINTIFF's colostomy bag.

44. Being that the INDIVIDUAL DEFENDANTS recovered a firearm and what turned out to be a stolen credit card from the scene, they made a determination to falsely place the blame on MR. THOMPSON for these transgressions.

45. To further bolster their case against MR. THOMPSON, the INDIVIDUAL DEFENDANTS concocted a story in which they allegedly had to search him twice in order to find the firearm which was resting on the PLAINTIFF's waist.

46. The ludicrous of this fabricated story aside, as it is highly improbably that anyone with a colostomy bag would have a gun resting against it, the INDIVIDUAL DEFENDANTS falsely asserted that PLAINTIFF made explicate and inculpatory statements.

47. Based upon the INDIVIDUAL DEFENDANTS fabricated story, MR. THOMPSON was detained and remained in prison from August 22, 2011 until May 29, 2015, when the criminal case against MR. THOMPSON relating to this matter was dismissed, according to the New York County Court Clerk.

48. PLAINTIFF was indicted in New York County on charges of Criminal Possession of a Weapon in the Second Degree and Criminal Possession of Stolen Property, but was not charged with any Robbery count.

49. The INDIVIDUAL DEFENDANTS fabrications made at the suppression hearing and at the trial directly resulted in decision adverse to PLAINTIFF by the trial court.

50. At a hearing, the Trial Court acknowledged that the 911 caller's descriptions of the robbers' clothing did not comport with what the individuals who were stopped were wearing.

51. At trial, the INDIVIDUAL DEFENDANTS compelled a civilian witness to testify that the gun recovered from PLAINTIFF was the very same used in a Robbery, for which MR. THOMPSON was not charged.

52. Because of the INDIVIDUAL DEFENDANTS false narrative and fabricated facts, PLAINTIFF was convicted on May 23, 2012 of criminal possession of a weapon in

the second degree (two counts) and criminal possession of stolen property in the fourth degree, and sentenced to an aggregate term of 12 years in prison.

53. On April 30, 2015, the Supreme Court of the State of New York, Appellate Division, First Department, unanimously reversed the Hearing and Trial Court on the law, granted the motion to suppress, and dismissed the indictment.

54. The Appellate Division dismissed because: "**the [INDIVIDUAL DEFENDANTS'] did not have the reasonable suspicion necessary to detain [Plaintiff].**" Such a determination, under the circumstances, provides an indication of the innocence MR. THOMPSON has steadfastly held.

55. PLAINTIFF was not informed of the Appellate Division's decision until after the Appellate Division's decision was recorded by the Clerk of the Court on May 29, 2015.

56. NEW YORK CITY acting grossly negligently, wantonly, knowingly, and intentionally allowed through a lack of oversight, procedure, and training for the INDIVIDUAL DEFENDANT to be on patrol and active in the community.

57. NEW YORK CITY encouraged "gun collars" at all costs by its Police Officers.

58. NEW YORK CITY, at this time, engaged in a policy of stop-and-frisk which has been shown to be patently unconstitutional and discriminatory. These policies directly contributed to PLAINTIFF's arrest.

59. The INDIVIDUAL DEFENDANTS knowingly and willfully wrongfully arrested MR. THOMPSON without reasonable suspicion, let alone probable cause.

60. Moreover, DEFENDANTS acted with malice by wrongfully prosecuting PLAINTIFF without probable cause via fabricating inculpatory statements and facts, further denying MR. THOMPSON a fair trial.

61. As a result of the INDIVIDUAL DEFENDANTS' actions, MR. THOMPSON suffered a clear violation to his Civil Rights as well as lasting harm, some of which are the following:

   a. MR. THOMPSON spent approximately three years, nine months, and seven days in prison (1,376 days), thus his actual freedom was infringed; and

   b. PLAINTIFF underwent lasting phycological trauma due to his denial of a fair trial, malicious prosecution, and subsequent wrongful imprisonment;

62. Such, denial of a fair trial, malicious prosecution, resulting damages and embarrassment, all of which resulted directly from the actions of the DEFENDANTS' actions under color of law against MR. THOMPSON.

## **AS AND FOR A FIRST COUNT,**
## **42 U.S.C. § 1983**
(Malicious Prosecution Against All Defendants)

63. PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 62 of this Complaint with the same force and effect as if fully set forth herein.

64. Under color of law, the DEFENDANTS, their agents, employees and servants deprived the MR. THOMPSON of his Fourth, Fifth and Fourteenth Amendment rights to protection from unlawful seizure in the form of unlawful and wrongful arrest and malicious prosecution.

65. Any one of the DEFENDANTS could have prevented a continuation of the wrongs propagated against MR. THOMPSON.

66. At no point did the INDIVIDUAL DEFENDANTS come forward or try to correct the wrongs and civil rights abuses that MR. THOMPSON was subject to.

67. In fact, the DEFENDANTS actions and narrative supported, propelled, and created prosecution actions MR. THOMPSON

68. PLAINTIFF's due process was further violated when the INDIVIDUAL DEFENDANTS affirmatively arrested PLAINTIFF, knowing such an arrest had no basis in probable cause and continued in the wrongful conduct by processing and actively prosecuting MR. THOMPSON.

69. At no point did the INDIVIDUAL DEFENDANTS follow their sworn duty to protect the public from police abuse.

70. As a consequence of the DEFENDANTS, collectively and individually, unconstitutional actions, grossly negligent behavior, and violation Federal laws, MR. THOMPSON was deprived of his freedom; was subject to great economic and emotional harm; and was subjected to great fear, terror, personal humiliation and degradation; and continues to suffer economic distress as a result of the aforesaid unlawful conduct of DEFENDANTS, their agents, employees, and servants.

71. The DEFENDANTS, their agents, employees and servants acted under color of law to deny MR. THOMPSON his constitutional rights to due process and malicious prosecution.

72. Without any reasonable or rational basis for this conduct, the rights secured to PLAINTIFF by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution were violated.

73. Due to the above actions and unlawful conduct, MR. THOMPSON has suffered significant harm.

74. The by reason of the foregoing, MR. THOMPSON has been damaged.

## AND FOR A SECOND COUNT
## 42 U.S.C. § 1983
(Denial of Fair Trial)

75. PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint with the same force and effect as if fully set forth herein.

76. INDIVIDUAL DEFENDANTS, fabricated facts, statements, and circumstances when directly testifying at the suppression hearing and jury trial.

77. The INDIVIDUAL DEFENDANTS maintained this fabrication before the prosecutors involved in this malicious and wrongful prosecution of MR. THOMPSON.

78. The INDIVIDUAL DEFENDANTS fabrications influenced the trial court's decision during the suppression hearing and the jury's verdict during the jury trial.

79. Such fabrication denied PLAINTIFF of his Fifth, Sixth, and Fourteenth Amendment Rights to a fair trial under the United States Constitution.

80. As a direct result of such conduct, PLAINTIFF suffered a deprivation of liberty for 1,376 days.

## AND AS FOR A THIRD COUNT
## 42 U.S.C. § 1983
(Municipal Liability)

81. PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 81 of this Complaint with the same force and effect as if fully set forth herein.

82. In actively inflicting and failing to prevent the above stated abuses incurred upon MR. THOMPSON of malicious prosecution and denial of a fair trial, resulting deprivation of freedom that comes from a disregard to proper training of police officers;

the DEFENDANTS acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of MR. THOMPSON against illegal seizure in the form described above that resulted in malicious prosecution of PLAINTIFF.

83. NEW YORK CITY regularly encouraged the behavior of the Individual Defendants via the unconstitutional stop-and-frisk program and the necessity to secure a conviction for gun-related arrests.

84. Said civil and constitutional rights are guaranteed to MR. THOMPSON by 42 U.S.C. §§ 1983, 1985, and by the Fourth, Fifth, and Fourteenth Amendment of the United States Constitution.

85. NEW YORK CITY exhibited gross negligence and deliberate indifference to MR. THOMPSON by allowing the INDIVIDUAL DEFENDANTS to patrol the streets without proper training or discipline.

86. NEW YORK CITY was more concerned about the result then the process itself, causing many individuals to be improperly stopped, seized and maliciously prosecuted without probable cause all because of the color of their skin and the areas in which they live.

87. At the time of underlying facts of this instant case, NEW YORK CITY supported a policy of Stop-and-Frisk which was subsequently found to be unconstitutional due to its disproportionate impact on young black men being unlawfully stopped. Such a policy directly impacted PLAINTIFF as a young black man who was unlawfully stopped and searched resulting in unlawful malicious prosecution.

88. NEW YORK CITY's stated "though on crime" strategies puts an emphasis, motivation, and reward for results, such as a gun related arrested and disregards the lawfulness of such an arrest, as seen through the then highly active Stop-and-Frisk policy.

89. Such policies of the CITY OF NEW YORK directly and actually caused the harm to PLAINTIFF via encouraging and supporting MR. THOMPSON's malicious prosecution by the INDIVIDUAL DEFENDANTS.

90. Both before and after August 22, 2011, NEW YORK CITY has permitted, tolerated, and encouraged a pattern and practice of unjustified, unreasonable, and illegal abuses and arrest of persons by police officers of NEW YORK CITY and the wrongful detention of such persons.

91. Although such police conduct was improper, said incidents were covered up and defendant by NEW YORK CITY, its agents, employees and servants by official claims that's the officers' gross negligence, excessive force and abuse of process were justified and proper, or by leveling false charges against the persons who were victims of said gross negligence, illegal searches and seizures and abuse of process, so as to insulate the offending police officers and other officials from prosecution and liability.

92. Said charges and official claims have been fully backed by NEW YORK CITY, which has repeatedly and unreasonably sided with the abuse of persons so affected in far to many cases, despite vast evidence of wrongdoing by its police officers against individuals, including MR. THOMPSON herein.

93. Additionally, NEW YORK CITY has systematically failed to properly train or identify the improper abuse, misuse, violative acts by police officers and officials, while

further failing to subject such officers and officials to discipline, closer supervision or restraint.

94.     Upon information and belief, specific systemic flaws in the NEW YORK CITY and its police department hastily accepts the police officers' reports as provided regarding abuses and civil rights infringements, despite evidence to suggest that the police reports are inaccurate, untruthful and meant to conceal blatant police misconduct.

95.     Said cover-up by the NEW YORK CITY, was executed in this case where NEW YORK CITY, its agents, employees and servants failed to properly act in a reasonable and lawful manner resulting in the malicious prosecution of MR. THOMPSON.

96.     By permitting and assisting such a pattern of police misconduct, NEW YORK CITY, acted under color of custom and policy to condone, encourage and promote the deprivation of MR. THOMPSON's Fifth, Sixth, and Fourteenth Amendment rights.

97.     The actions, of the INDIVIDUAL DEFENDANTS in maliciously prosecuting and other such wrongs against MR. THOMPSON was a direct result of NEW YORK CITY'S failure to train and supervise the INDIVIDUAL DEFENDANTS, who were each acting under color of law and pursuant to the objectives of NEW YORK CITY.

98.     NEW YORK CITY should have known that such failures and gross negligence would cause the precise economic, emotional, and civil rights injuries suffered herein in by MR. THOMPSON.

99.     As a direct consequence of the NEW YORK CITY'S systemic practice, pattern, and custom of intentionally or recklessly promoting and supporting officers' and officials' violations of 42 U.S.C. § 1983, MR. THOMPSON was deprived of his freedom and subject to extensive harm.

100. As a proximate cause of NEW YORK CITY, its agents, and employees, supporting and effectively promoting the very same police abuses which occurred against MR. THOMPSON, PLAINTIFF was subjected to great fear, personal humiliation and degradation, with wanton disregard for the harm and damage done to the economic and emotional wellbeing of the MR. THOMPSON.

101. That by reason of the foregoing, MR. THOMPSON has been damaged.

## **PUNITIVE DAMAGES**

102. The PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 101 of this Complaint with the same force and effect as though fully set forth herein.

103. The acts of the DEFENDANTS were willful, wanton, malicious and oppressive and were motivated by a desire to harm MR. THOMPSON, without regard for PLAINTIFFS wellbeing or civil rights, and were based on a lack of concern and ill-will towards MR. THOMPSON.

104. Such acts therefore deserve an award of punitive damages in order to ensure that no such wanton violation of Civil Rights occurs to any others.

**WHEREFORE**, PLAINTIFF demands judgment against DEFENDANTS:

      a.     Special and Compensatory Damages;

      b.     Punitive Damages;

      c.     Award costs of this action including attorney's fees to the PLAINTIFF; and

      d.     An order granting such other legal and equitable relief as the court deems just and proper,

**<u>A JURY TRIAL IS HEREBY DEMANDED.</u>**

Pursuant to Fed. R. Civ. P. 38, PLAINTIFF hereby requests a trial by jury for all issues so triable.

Dated:   April 25, 2019
         Flushing, New York

                               Respectfully Submitted,

                               **WEINSTEIN & WEINSTEIN, LLP**
                               *Attorney for Plaintiff*

By:   _____/s_____
        **JACOB Z. WEINSTEIN ESQ.** (JW6133)
        68-15 Main Street, 2nd Floor
        Flushing, NY 11367
        Telephone: (646) 450-3484
        Facsimile: (646) 774-0368
        E-Mail:Jacob@WeinsteinLLP.com