UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
       :
LATIFF THOMPSON,     :
       :
    *Plaintiff*,    :
       :
  -against-    :
       :    18 Civ. 04105 (PAC)
CITY OF NEW YORK, KAHLA CADORE  :
(in an official and individual capacity); SIWY  :
MADE (in an official and individual capacity);  :    **OPINION & ORDER**
and GENE PARK (in an official and individual  :
capacity).    :
       :
    *Defendants*.    :
       :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Latiff Thompson brings this action under 42 U.S.C. § 1983 against New York City and three New York City Police officers (together "Defendants"), alleging (1) malicious prosecution, (2) denial of a fair trial, and (3) a *Monell* claim for stop and frisk.

    Plaintiff filed a Second Amended Complaint on April 25, 2019.  (Dkt. 24.)  Defendants move to dismiss the Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. 29.)  The Defendants' motion is GRANTED.

## **BACKGROUND**[1]

    On August 22, 2011, Defendants, police officers, were on patrol in the vicinity of East

---

[1] The facts are taken from the Second Amended Complaint and documents incorporated by reference and are accepted as true for the purpose of Defendants' motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d

1

112th Street and East 115th Street near First Avenue when they received a radio report that a gunpoint robbery had just occurred at 77 East 115th Street.  (Compl. ¶¶ 23-24.)  While Defendants were searching the area they received a second report of a "suspicious male" in front of 1581 Park Avenue, two blocks away from the location of the robbery.  (*Id.* ¶ 25.)  The Defendants went to that area and observed Plaintiff exit the location and three other young men who emerged close in time to Plaintiff.  (*Id.* ¶ 26.)  Plaintiff Latiff Thompson is 30 years old.  (*Id.* ¶ 14.)  The Complaint alleges that Plaintiff did not know the three young men, but was exiting the building at a similar time.  (*Id.* ¶ 27.)

The Defendants stopped Plaintiff and the other men and told them to stand against a nearby fence.  (*Id.* ¶ 34.)  The Defendants asked Plaintiff and the other young men for identification.  (*Id.*)  Plaintiff allegedly informed the Defendants that he was injured and voluntarily offered his identification to show he did not have any outstanding warrants.  (*Id.* ¶ 37.)  The Complaint alleges that Plaintiff was on crutches at the time of the stop; he was recovering from being shot and still had bullets logged in his hip, as well as a colostomy bag under his shirt.  (*Id.* ¶¶ 28-30.)  One of the three other men produced a credit card as his identification.  (*Id.* ¶ 38.)  While the Defendants were checking identification, one of the three men struck Defendant Park, dropped a firearm, and fled the location.  (*Id.*)  He eluded pursuit.  (*Id.* ¶¶ 39, 41.)

Plaintiff was indicted in New York County on charges of criminal possession of a weapon in the second degree and criminal possession of stolen property.  (*Id.* ¶ 48.)  Plaintiff was not charged with robbery.  (*Id.*)  According to the Second Amended Complaint, the Defendants recovered a firearm and credit card at the scene and allegedly "made a determination to falsely place the blame on [Plaintiff] for these transgressions."  (*Id.* ¶ 44.)  Plaintiff alleges that

"[t]o further bolster the case, against [Plaintiff], the individual Defendants concocted a story in which they allegedly had to search him twice to find the firearm which was resting on the Plaintiff's waist." (*Id.* ¶ 45.)  The Complaint alleges the defendants falsely asserted that "Plaintiff made explicit and inculpatory statements." (*Id.* ¶ 46.)  Finally, the Complaint asserts that based upon the Defendants' fabricated story, Plaintiff was detained and remained in prison from August 22, 2011 until May 29, 2015.  (*Id.* ¶ 47.)

Plaintiff's motion to suppress was denied.  (*Id.*)  At trial on May 23, 2012, Plaintiff was convicted of criminal possession of a weapon in the second degree and criminal possession of stolen property in the fourth degree.  *See People v. Thompson*, 127 A.D.3d 658, 658 (1st Dep't 2015).  He was sentenced as a second violent felony offender to an aggregate term of 12 years.  *Id.*

On April 30, 2015, the First Department reversed holding that the trial court erred in denying Plaintiff's motion to suppress.  (Compl. ¶ 59.)  The Court determined that the initial stop of four men (including Plaintiff) justified a level one request for information; but there was no reasonable suspicion to support further detention of Plaintiff.  *Thompson*, 127 A.D.3d at 660.  Rather the defendant officers should have informed them, they were free to leave once they had gathered the basic information permissible in a level one stop.  *Id.*; Compl. ¶ 54.  Specifically, the Court rejected the theory that the flight of one of the men could be imputed to the others in the group who did not flee when stopped by the officers, and thus, was insufficient to raise the encounter to one based on reasonable suspicion—a necessary predicate for a showup identification.  *Thompson*, 127 A.D.3d at 662.  The Court reasoned that the officers should "never have had the opportunity to notice the bulge in [Thompson's] waistline that they missed when they performed the initial search." *Id.*  The Court held that because the seizure of the

3

weapon was illegal, so too was the arrest of Thompson for possessing it. *Id.* The Court further held that the credit card should have been suppressed as fruit of an unlawful arrest. *Id.* Because the gun and stolen credit card were not suppressed, the conviction was reversed. *Id.*

Plaintiff was not informed of the decision until May 29, 2015. (Compl. ¶ 55.) Plaintiff spent nearly four years in prison and alleges he underwent lasting psychological trauma. (*Id.* ¶ 61.)

## DISCUSSION

### I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," and construe the complaint in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). On a 12(b)(6) motion, a court may consider documents that are attached as exhibits, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken. *See Chambers*, 282 F.3d at 153. The Appellate Division's decision clearly can be considered.

### II. Plaintiff's Claims

The Complaint raises three claims, under 42 U.S.C § 1983: (1) malicious prosecution, (2)

denial of a fair trial claim, and (3) municipal liability.

### A.     Malicious Prosecution

To state a claim for malicious prosecution, Plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019).  Defendants urge dismissal on the grounds that Plaintiff cannot establish favorable termination and malice.

In *Lanning v. City of City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018), the Second Circuit reaffirmed the longtime requirement that favorable termination under federal law requires that 'the prosecution terminated in some manner indicating that the person was not guilty of the offense charged,' based on the 'merits' rather than 'on any number of procedural or jurisdictional grounds.' " *Rosario v. City of New York*, No. 18 CIV. 4023 (LGS), 2019 WL 4450685, at *4 (S.D.N.Y. Sept. 16, 2019) (citing *Lanning*, 908 F.3d at 29).  The Second Circuit clarified that for federal claims brought under § 1983 federal law defines the elements, and that a "State's tort law serves as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning*, 908 F.3d at 25.

Plaintiff fails to establish that the criminal proceeding was terminated in his favor and therefore, Plaintiff cannot sustain a malicious prosecution claim.  Plaintiff's state prosecution for criminal possession of a weapon ended because his conviction was reversed on appeal, on evidentiary grounds, based on a finding that the police officers never should have had the opportunity to see the gun in Plaintiffs' waistline.  The reversal of Plaintiff's conviction did not call into question the possession of contraband and thus, it does not indicate that Plaintiff was not

guilty on the merits of criminal possession of a weapon. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 162 (2d Cir. 2013) (affirming, on summary judgment, no favorable termination where a conviction for criminal possession of a controlled substance was reversed on the grounds that the search was unlawful and the officers had found drugs on Gonzalez's person).

Granting of a motion to suppress does not inexorably lead to § 1983 liability. On the other hand, a conviction reversed on suppression grounds may support a claim for malicious prosecution. For example, if the reversal of Plaintiff's conviction on a suppression motion indicated Plaintiff did not actually possess a gun or if Plaintiff had put forth a well-pleaded allegation that he did not, in fact, possess the gun or contraband that the police recovered from him during the unlawful search. While it might not be accurate for Defendants to state that, "Plaintiff admitted that a firearm and other property were found on his person prior to arrest," Plaintiff also has not affirmatively pled to the contrary. (Def. Mot. at 11, Dkt. 29.) Accordingly, this case is distinguishable from the one on which Plaintiff relies, *Smalls v. City of New York*, 181 F. Supp. 3d 178, 188 (E.D.N.Y. 2016). In *Smalls*, no gun was recovered from plaintiff's person and the plaintiff claimed, "that he had no weapon [and] that he gave no one a weapon." *Id.* Further, *Smalls* was decided prior to *Lanning* based on the standard, under New York state law, requiring only that the termination was not inconsistent with innocence. Here, the reversal of Plaintiff's conviction on appeal did not call into question the possession of contraband of which Plaintiff was convicted, and thus, the termination of the proceeding does not indicate that Plaintiff was not guilty of criminal possession on the merits as required by federal law. *See Lanning*, 908 F.3d at 29. Plaintiff's § 1983 malicious prosecution claim is dismissed.

**B.   Denial of Fair Trial**

In a § 1983 action, a fair trial claim lies where a police officer "creates false information

6

likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997).  The Second Circuit has held that a person has "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000).  To state a fair trial claim based on fabricated evidence, a plaintiff must allege that "an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016).  A fair trial claim based on fabricated evidence can be sustained even if the officer had probable cause to arrest in the first place. *Id.* at 277-78.

Defendants argue this claim fails because *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019), imposed favorable termination as an element of a fair trial claim based on fabricated evidence.[2]  The Court has already determined Plaintiff has not adequately alleged a favorable termination (*see supra*); and it need not decide the issue again.  Nevertheless, Plaintiff's claim for denial of a fair trial fails.

Plaintiff's bare-bones allegations do not raise a plausible inference that the Defendants violated his right to a fair trial. The Complaint does not identify what evidence was fabricated; and the Complaint fails to identify what, if any, fabricated evidence the defendants offered or to whom it was offered and what effect the purported false evidence would have had on the jury.  Further, the Complaint does not specify which defendants allegedly fabricated the evidence.  The allegations relating to fabricated evidence are no more than "threadbare recitals" supported by conclusory allegations that do not transform Plaintiff's denial of a fair trial claim from a mere

---

[2] The Second Circuit has not yet addressed whether favorable termination is an element of a fair trial claim based on fabricated evidence post *McDonough*.

possibility to plausible.  *See Hardy v. City of New York*, No. 12 CIV. 17 RJS, 2013 WL 5231459, at *3 (S.D.N.Y. July 9, 2013) (allegations that were silent about what fabricated evidence defendants submitted, when, or to whom, were insufficient to raise a plausible inference that Plaintiff's right to a fair trial was violated).  Accordingly, the fair trial claim is dismissed.

### C.    Municipal Liability *(Monell)* Claim

A municipality may be held liable under § 1983 for a policy or custom that caused the deprivation of plaintiff's constitutional right.  *Newton v. City of New York*, 779 F.3d 140, 152 (2d Cir. 2015).  To satisfy a motion to dismiss, the "plaintiff need not identify an express rule or regulation, but can show that a ... practice of municipal officials was so persistent or widespread as to constitute a custom or usage."  *See e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015).  There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).  "[B]oilerplate assertions of municipal policy are insufficient to state a claim for *Monell* liability."  *Bishop v. City of New York*, No. 13-CV-9203 (AJN), 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016).

Plaintiff fails to state a *Monell* claim.  Plaintiff has not pled facts demonstrating a direct link between his injuries and the municipal policy of stop and frisk or practice of "failure to train."  The allegation that a policy existed, without more, is insufficient to carry Plaintiff's claim.  *Hardy,* 2013 WL 5231459, at *5.  Plaintiff's allegations relating to "stop and frisk" and "failure to train" are boilerplate and conclusory statements lacking factual support, and thus, are insufficient to state a plausible claim for relief.  *See Twombly*, 550 U.S. at 555.  Accordingly, Plaintiff's municipal liability claim against the City is dismissed.

## **CONCLUSION**

Defendants' motion to dismiss is granted. The Clerk of the Court is directed to terminate the motion at Docket 29 and to close the case.

Dated: New York, New York  　　　　　　　　　SO ORDERED
　　　　May 1, 2020

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　PAUL A. CROTTY
　　　　　　　　　　　　　　　　　　　　　　United States District Judge